COUNTY OF SHERBURNE v.
KENNETH SCHOEN AND OTHERS.

236 N. W. 2d 592.

November 7, 1975—No. 45275.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *James N. Bradford,* Assistant Attorney General, and *Edward M. Laine,* Special Assistant Attorney General, for appellants.

*Robert B. Danforth,* Assistant County Attorney, for respondent.

TODD, JUSTICE.

Defendants appeal from an order permanently enjoining the commissioner of corrections and his agents from disclosing the contents of any presentence report to inmates, parolees, or probationers unless first authorized to do so by court order. We reverse.

After "considerable investigation and study," the Minnesota Department of Corrections announced that it was adopting a new open-file policy whereby inmates at Minnesota penal institutions, parolees, and probationers were to be allowed access to the information contained in their files. Plaintiff county asserts that in-

put from prosecutors and the judiciary was neither sought nor obtained by the commissioner of corrections in deciding to adopt the policy. The new policy was to be implemented in phases— the first to begin on March 1, 1974. On January 7, 1974, the commissioner informed all district and county judges by letter of the new policy. Subsequently, plaintiff commenced this action in the Sherburne County District Court, obtaining a temporary restraining order which halted the policy's initiation.

The aspect of the open-file policy in issue in this litigation involves the proposed disclosure of presentence investigation reports (PSI) found in the files of inmates of correctional institutions and persons on probation and parole. Pursuant to Minn. St. 609.115, a court may order an investigation of a defendant who has been convicted of a felony. The PSI report serves to assist the trial judge in the sentencing process. The PSI report is to be made by the court's probation officer, if there is one, or by the commissioner of corrections. Minn. St. 609.115, subds. 4, 5, and 6, are of particular importance in this case. They provide:

"Subd. 4. Any report made pursuant to subdivision 1 of this section shall be open to inspection by the prosecuting attorney and the defendant's attorney prior to sentence and on the request of either of them a summary hearing in chambers shall be held on any matter brought in issue, but confidential sources of information shall not be disclosed unless the court otherwise directs.

"Subd. 5. If the defendant is sentenced to the commissioner of corrections, a copy of any report made pursuant to this section and not made by the commissioner shall accompany the commitment.

"Subd. 6. Except as provided in subdivisions 4 and 5 or as otherwise directed by the court any report made pursuant to this section shall not be disclosed."

During the course of this litigation, the parties entered into a proposed stipulation for consent decree which provided for PSI

reports to be edited into a bifurcated form of factual data and confidential data. Factual data was to include:

"a) An official version of the crime.

"b) The Defendant's version of the crime.

"c) Family history (excluding any comments by family members about the Defendant).

"d) The educational background of the Defendant.

"e) Religious background of the Defendant.

"f) The Defendant's employment record.

"g) Economic data of defendant (assets, liabilities and other pertinent data).

"h) Prior record of convictions.

"i) Plea negotiations, including admission in open Court by the Defendant of commissions of crimes wherein the State has agreed not to prosecute."

The confidential portion of the report was to include comments and evaluations concerning the individual's characteristics, prospects for rehabilitation, and recommended sentence. Only the factual data was to be divulged to the individual under the terms of the proposed stipulation, unless otherwise ordered by the sentencing court.

The trial court, although furnished with the proposed settlement decree, entered a broad order permanently enjoining the commissioner of corrections from disclosing any of the PSI reports to inmates, parolees, or probationers unless authorized to do so by court order. The trial judge held that § 609.115, subds. 4, 5, and 6, prevent implementation of the proposed policy changes.

Subsequent to the trial court's ruling, L. 1974, c. 479, coded as Minn. St. 15.162 to 15.168, was enacted. These statutes, some of which were amended by L. 1975, c. 401, deal with the collection, retention, and dissemination of information by the state and its political subdivisions. Minn. St. 15.165 provides in part:

"(b) Upon request to a responsible authority, an individual

shall be informed whether he is the subject of stored data on individuals, whether it be classified as public, private or confidential. Upon his further request, an individual who is the subject of stored public or private data on individuals shall be shown the data without any charge to him and, if he desires, informed of the content and meaning of that data. After an individual has been shown the data and informed of its meaning, the data need not be disclosed to him for six months thereafter unless a dispute or action pursuant to this section is pending or additional data on the individual has been collected. The responsible authority shall provide copies of the data upon request by the individual subject of the data, provided that the cost of providing copies is borne by the requesting individual.

"(c) An individual may contest the accuracy or completeness of public or private data concerning himself. To exercise this right, an individual shall notify in writing the responsible authority describing the nature of the disagreement. The responsible authority shall within 30 days correct the data if the data is found to be inaccurate or incomplete and attempt to notify past recipients of inaccurate or incomplete data, or notify the individual of disagreement. Data in dispute shall not be disclosed except under conditions of demonstrated need and then only if the individual's statement of disagreement is included with the disclosed data. The determination of the responsible authority is appealable in accordance with the provisions of the administrative procedure act relating to contested cases."

■ We conclude that the disclosure issue cannot be resolved solely upon the provisions of Minn. St. 609.115. The provisions of § 609.115, subd. 6, are irreconcilable with the provisions of Minn. St. 15.165 (b,c), quoted above, as to nonconfidential data. Section 15.165 was passed after the adoption of Minn. St. 609.115 and extends limited disclosure rights to the defendant involved in the criminal justice process. Consequently, we are governed by the rule of statutory construction provided in § 645.26, subd. 4, which provides as follows:

"When the provisions of two or more laws passed at different sessions of the legislature are irreconcilable, the law latest in date of final enactment shall prevail."

■ Section 609.115, subd. 5, requires that a copy of the PSI report accompany the commitment of an individual and become a part of his record. As such, it must be disclosed under the provisions of §§ 15.162 to 15.167, subject to the exceptions for confidential data and for records relating to medical or psychiatric treatment of the individual.

■ We hold that the stipulation proposed by the parties in this case is appropriate under presently existing statutes and should be made part of the judgment denying plaintiff's claim for injunctive relief. The items to be disclosed under (a) through (i) of the stipulation are clearly nonconfidential and are required to be disclosed to the subject of the report.

Plaintiff expresses concern that some clerk in the commissioner's office will be making the decision as to what is factual and confidential and argues that past records should be protected from such indiscriminate evaluation. It does not object to the situation where the court in the future could identify those parts of the PSI reports which are to be regarded as confidential, and we commend to the courts this practice. However, we do not see the difficulty in having the agents who originally prepared existing PSI reports examine them if they have not been scrutinized by the court, for purposes of bifurcating the data, since the discretion to be exercised by the agents is very limited by the terms of the stipulation. The pertinent part thereof provides:

"Said reports shall, wherever possible, be edited by the agent who submitted said report to the Court and when not available, shall be edited by someone in a like capacity. After said editing, the entire report containing the factual data and confidential data shall be sent to the sentencing Judge, if available, and if not available, to the Chief Judge of the District where sentencing occurred. Said Judge shall, within ten (10) days, approve or dis-

approve said report. In the event the Court disapproves said report none of said report shall be disclosed to either the Defendant or the Parole Authority. If the sentencing Court approves said report in its bifurcated form the factual data may be submitted to anyone designated by the Commissioner of Corrections and the confidential data shall remain with the Commissioner of Corrections and shall not remain in the base file of the Defendant, nor shall it or its contents be divulged to the Defendant."

Moreover, the person making such a determination will want to be cautious since disclosure of confidential matters or matters relating to the medical or psychiatric treatment of the individual would be violative of § 609.115, subd. 6.

■ We further hold that the subject of the report shall be advised whether data is in his record which has been deemed confidential by the terms of this decision and under our statutes. He shall be further advised that he has a right to apply to the court to have such information disclosed to him. If such application is made to the court and the court denies all or part of the application, it should set forth its reasons for denying the release of the confidential information to the subject. This procedure is consistent with A. B. A. Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968) § 4.4(b).

The order for a permanent injunction is reversed and the matter remanded to the district court with instructions to enter judgment denying the requested injunction and incorporating as part of said judgment the stipulation offered by the parties and rejected by the trial court at the time of trial.

Reversed and remanded.