Dwight W. KELSEY, Appellant.

v.

STATE OF MINNESOTA, Kenneth Schoen, Commissioner of Corrections, Frank Wood as Warden of Stillwater State Prison, Mr. R. T. Mulcroone, Chairman, M.C.A. Parole Board, George Crust, Record Officer and their employees and agents, Appellees.

No. 77–1532.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 31, 1977.

Decided Nov. 8, 1977.

Dwight W. Kelsey, pro se.

Warren R. Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Jane Prohaska, Asst. Atty. Gen., St. Paul, Minn., for appellees.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

Dwight Kelsey appeals from the District Court's grant of the defendant's motion for summary judgment. Kelsey brought suit in the United States District Court for the District of Minnesota, alleging that the defendants had denied him his constitutional rights under color of state law in violation of 42 U.S.C. § 1983. Kelsey is presently incarcerated in the Minnesota State Prison at Stillwater. This action arose from the manner in which Kelsey was considered for, and denied parole.

The Minnesota Parole Board has adopted parole guidelines that include the use of a matrix system to establish target release dates for inmates. Although this system was not used when Kelsey was initially incarcerated, Kelsey's matrix score was subsequently computed. His initial target release date was established as 75 months from the date of incarceration. However, an error was made in computing Kelsey's matrix score. His score was recomputed on August 5, 1976, to 60 months after incarceration. On August 5, 1976, Kelsey had already served 61 months in prison. Thus, he was one month past his target release date.

The following parole guidelines detail the procedures for parole consideration:

1. The board holds an initial hearing to assign a target release date. The inmate is entitled to be present. A caseworker is assigned to each inmate to verify the information used to compute the matrix score, and to ensure the accuracy of the computation.

2. The board holds interim annual reviews to review each inmate's file and update information. Inmates are not entitled to be present at the interim annual review.

3. The board holds a re-entry hearing approximately 60 days before the target release date. The inmate is entitled to appear before the board and submit a proposed general re-entry plan. A caseworker is assigned to each inmate to assist the inmate in all phases of re-entry. The board either approves the general re-entry plan and directs the inmate to submit a more

detailed plan, or the board disapproves the plan or portions of it and gives written directions to the inmate concerning the deficiencies of the proposed plan. This hearing is then continued for whatever subsequent considerations are necessary.

Once the inmate submits a detailed re-entry plan and the board approves it, the guidelines dictate that "the Board will grant parole effective on the target release date."

Kelsey's first re-entry hearing was held on September 6, 1976, before a three-member panel of the parole board. Although the board noted that Kelsey became extremely upset during the hearing, it determined that Kelsey should begin preparation of a general proposed re-entry plan, and assigned a caseworker to help him. The hearing was continued for thirty days. The next hearing was held on October 6, 1976. The board noted that Kelsey's recent behavior impelled it to request that a psychiatric evaluation of Kelsey be made and submitted to the board. The board held further hearings, but Kelsey refused to submit to a psychiatric examination. The full parole board finally determined on January 25, 1977, that it would not consider Kelsey's case until he submitted to a psychiatric examination.

Kelsey responded by filing a complaint in District Court alleging that the Minnesota Parole Board applies its parole guidelines and matrix system in a discriminatory manner; that the use of juvenile offenses and prior adult offenses in the computation of an inmate's matrix subjects an inmate to double jeopardy, a violation of the Fifth Amendment of the Constitution; and that he has been denied access to his file. He sought to require the parole board to apply the guidelines and matrix system nondiscriminatorily; to release inmates qualified for parole under the matrix system; to prohibit the parole board from using prior convictions in the matrix computation; to allow inmates to copy their base files within thirty days of their request; to receive a copy of his files; and to have a parole hearing held for him immediately. He also sought damages of $400,000 allegedly sustained by him due to the defendants' abridgment of his constitutional rights.

The defendants filed a motion for summary judgment. The court issued an order directing that the parties submit briefs and affidavits in support of, or in opposition to, the motion by May 27, 1977. On May 23, 1977, Kelsey filed a motion to amend his complaint. The amended complaint filed on June 8, realleged the issues raised in the initial complaint, but also alleged inadequate medical care by the defendants. The court granted the defendants' motion for summary judgment on June 21, 1977. It denied Kelsey's motion to amend his complaint and dismissed the action with prejudice. Kelsey timely filed this appeal.

The issues raised on appeal are whether the court had jurisdiction to consider Kelsey's claims for injunctive and declaratory relief, whether the motion for summary judgment was properly before the court, whether the court properly granted summary judgment on Kelsey's claim for damages, and whether the court should have allowed Kelsey to amend his complaint.[1]

### I.

Our initial inquiry is whether the District Court had jurisdiction to consider Kelsey's claims. If a state prisoner challenges the fact or duration of his confinement and seeks a speedier release, his sole federal remedy is a writ of habeas corpus, with its concomitant requirement of exhausting state remedies. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Preiser v. Rodriquez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). *See also* 28 U.S.C. § 2254(b), (c). Kelsey's claims attacking the validity of the guidelines and procedures employed by the Min-

---

1. Kelsey's allegation that he is unconstitutionally being denied access to his base file was considered by this Court in *Kelsey v. State of Minn. ex rel. Wood*, 554 F.2d 895 (8th Cir.

1977). Kelsey presents no facts in this appeal requiring a reconsideration of our earlier decision.

nesota Parole Board are claims that would result in a speedier release from the state penitentiary if the allegations proved true and the relief requested was granted. Since Kelsey has not exhausted his state remedies to the extent his complaint sought nondiscriminatory application of the parole guidelines, release on parole for qualified inmates under the matrix system, computation of an inmate's target release date and matrix score excluding in the computation an inmate's prior convictions, and an immediate parole hearing for Kelsey, we reverse and remand the judgment of the District Court, directing that the above-enumerated claims be dismissed for lack of jurisdiction.

## II.

Although those claims seeking a speedier release must be dismissed because state remedies were not exhausted, the District Court retains jurisdiction over the damage claims raised in the complaint and brought pursuant to 42 U.S.C. § 1983. *See Wolff v. McDonnell, supra,* 418 U.S. at 554–55, 94 S.Ct. 2963; *Preiser v. Rodriquez, supra,* 411 U.S. at 499, n.14, 93 S.Ct. 1827. The District Court disposed of the damage claim by summary judgment.[2]

2. The motion for summary judgment was properly before the court. Fed.R.Civ.P. 56(c) requires that a motion for summary judgment shall be served at least then days before the time fixed for the hearing. The requisite ten days notice was, in all probability, not given here. The defendants made service by placing a copy of the motion addressed to Kelsey in the mail on May 17, 1977. In that motion, the defendants requested a hearing on May 27, 1977. In lieu of a hearing, the court ordered that the motion was to be taken under submission upon the briefs and affidavits of the parties, which were to be filed no later than May 27, 1977. The motion was mailed exactly ten days prior to the submission date and three days should be added to the time period if service is by mail. 6 Moore's Federal Practice ¶ 56.14[1], at 56–355 (2d ed. 1976). Although a District Court cannot ignore the ten-day requirement, the requirement may be waived and is subject to the harmless error rule. *See Id.,* ¶ 56.14[1], at 56–357.

We are reluctant to apply the doctrine of waiver or harmless error because the plaintiff is proceeding *pro se.* But, in light of our deci-

Summary judgment is inappropriate unless the movant establishes his right to judgment with such clarity that no room for controversey remains. *Larsen v. Erickson,* 549 F.2d 1136 (8th Cir. 1977); *Ozark Milling Co., Inc. v. Allied Mills, Inc.,* 480 F.2d 1014 (8th Cir. 1973). "The party opposing a motion for summary judgment is to be given the benefit of all reasonable doubts in determining whether genuine issues of fact exist." *Wells v. Sherwood Medical Industries, Inc.,* 549 F.2d 1170, 1173 (8th Cir. 1977). There are no disputed issues of fact. Thus, the only question is the legal standard applicable to this case.

An inmate may prevail in a suit seeking reconsideration of parole, or an attack on the parole board's manner of decision making only if the board's action was "flagrant, unwarranted and unauthorized." *Scarpa v. U. S. Board of Parole,* 477 F.2d 278, 283 (5th Cir.) (en banc), *vacated and remanded to consider mootness,* 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973), or if the board failed to substantially comply with the guidelines it has established for itself. *Masiello v. Norton,* 364 F.Supp. 1133 (D.Conn.1973). *See also Scott v. Kentucky Parole Board,* 429 U.S. 60, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976); *Burton v. Ciccone,* 484 F.2d 1322 (8th Cir. 1973).[3]

sion on other issues in this appeal, we feel that Kelsey suffered no prejudice. Therefore, we find that any insufficiency in the notice was harmless error.

3. A prisoner seeking parole is not entitled to the same due process guarantees as a prisoner whose parole is being revoked. *Scott v. Kentucky Parole Board,* 429 U.S. 60, 61, n.1, 97 S.Ct. 342, 50 L.Ed.2d 218 (1976); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

[O]nce a cognizable benefit is conferred or received, governmental action must not be employed to deprive or infringe upon that right without some form of prior hearing. We are unaware, however, of any authority for the proposition that the full panoply of due process protections attaches every time the government takes some action which confers a new status on the individual or denies a request for a different status. *Scarpa v. U.S. Board of Parole,* 477 F.2d 278, 282 (5th Cir.) (en banc), *vacated and remanded to consider mootness,* 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973). If a parole board refuses

The parole board miscalculated Kelsey's target release date. Thus, the parole guidelines were not followed to the extent that Kelsey's first pre-release hearing was held after his correct target release date. However, Kelsey makes no complaint about the miscalculation of his target release date. Neither does he contend that the parole board lacks authority to require him to submit to a psychiatric examination before further parole hearings are held. There was no evidence before the District Court that supports a determination that the parole board acted in a "flagrant, unwarranted, or unauthorized" manner, *Scarpa v. U.S. Board of Parole, supra*, or failed to comply with its own guidelines. Absent such a showing the court properly granted the defendants' motion for summary judgment on the damage claim. We affirm the dismissal with prejudice of that claim.[4]

### III.

Kelsey also claims that the District Court erred when it denied his motion to amend his complaint. The motion for summary judgment was to be taken under submission by the court on May 27, 1977. Briefs and affidavits of the parties were to be filed by that date. Kelsey did submit his motion to amend his complaint on May 23, 1977 prior to the deadline; but the actual amended complaint, which stated claims of inadequate medical care was not filed until June 8, 1977, after the deadline. Therefore, when the summary judgment motion was submitted to the court on May 27, the court did not know that any claims other than those alleged in the initial complaint would be raised by Kelsey. Because the amended complaint was untimely filed, we find that the District Court properly denied Kelsey's motion to amend his complaint. We note,

however, that only the original complaint was before the court and was dismissed with prejudice. The amended complaint was not filed and has not been considered by the court. Therefore, Kelsey is free to file a new action alleging the claims of inadequate medical care which were alleged in the amended complaint.

The decision of the District Court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

---

to grant parole, the inmate has suffered no deprivation. *Id.* at 282; *Barradale v. United States Bd. of Paroles & Pardons*, 362 F.Supp. 338, 340 (M.D.Pa.1973).

4.  One of the named defendants is a member of the parole board. This Court has not yet considered whether a parole board member has quasijudicial immunity and is therefore immune from suits, or whether a parole board member has qualified immunity and is liable

for damages only if he did not act in good faith. Because of our decision in this case, we need not decide that issue. We are aware that some circuit courts have voiced their opinion on this issue. *See Thompson v. Burke*, 556 F.2d 231, 236 (3rd Cir. 1977); *Pope v. Chew*, 521 F.2d 400 (4th Cir. 1975); *Cruz v. Skelton*, 502 F.2d 1101 (5th Cir. 1974); *Keeton v. Procunier*, 468 F.2d 810 (9th Cir. 1972), *cert. denied*, 411 U.S. 987, 93 S.Ct. 2276, 36 L.Ed.2d 965 (1973).