**Dwight W. KELSEY, Petitioner, Appellant,**

**v.**

**STATE of Minnesota, State ex rel. Frank Wood, Warden, Respondents.**

**Nos. 49256, 49354.**

Supreme Court of Minnesota.

Aug. 3, 1979.

---

Dwight W. Kelsey, pro se.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Jane Prohaska, and Gary Hansen, Sp. Asst. Attys. Gen., St. Paul, C. Paul Jones, State Public Defender, and Linda Matthews Britton, Asst. State Public Defender, Minneapolis, John O. Sonsteng, President, and Stephen J. Askew, Minnesota County Attorneys Council, St. Paul, Delaney & Thompson, Peter J. Thompson, and John W. Lundquist, Minneapolis, National Assn. of Criminal Defense Lawyers, Inc., Monte M. Miller, Minneapolis and Stanley E. Karon, St. Paul, Minnesota Trial Lawyers Assn., for respondents.

YETKA, Justice.

Petitioner is serving a 10-year indeterminate prison term at Stillwater for attempted first-degree murder. These combined pro se appeals [1] are from two separate orders of the Washington County District Court dismissing without hearings petitions of petitioner for habeas corpus. In the one petition (our File No. 49256) petitioner sought release on the ground that he was wrongfully denied a pretrial evidentiary hearing prior to the 1971 trial. The court dismissed this petition because (a) it did not comply with the requirement of Minn.St. 589.04(4) that a copy of the warrant of commitment be attached to the petition, and (b) a petition for habeas corpus will only reach matters relating to the jurisdiction of the trial court, not trial errors. In the other petition (our File No. 49354) petitioner sought release primarily on the ground that the corrections board acted unlawfully in denying his parole. The court dismissed this petition because the decision to grant or deny parole is a matter that rests in the discretion of the corrections board and is not subject to review by habeas corpus.

We have no hesitancy in holding that the district court properly dismissed the petition in File No. 49256, which basically was an attempt by petitioner to use habeas corpus as a means of obtaining re-

---

1. Petitioner has sought relief here and in other courts on a number of occasions:

   a. Originally he filed a direct pro se appeal from judgment of conviction raising three issues: that exculpatory evidence was erroneously excluded, that the testimony of certain witnesses was untruthful, and that the transcript was inaccurate. This court affirmed the conviction. *State v. Kelsey*, 293 Minn. 397, 196 N.W.2d 287 (1972).

   b. He then sought postconviction relief claiming the trial court erred in refusing to accept his offer to plead guilty as part of a negotiated plea agreement and that the court had committed prejudicial error in discussing a matter of possible bias of a juror in the presence of defense counsel but in his absence. This court affirmed the denial of relief. *Kelsey v. State*, 298 Minn. 531, 214 N.W.2d 236 (1974).

   c. He apparently brought a second postconviction petition in 1976 but did not appeal the order denying that petition.

   d. He has also filed a number of petitions for habeas corpus relief in connection with the corrections board denying him access to his prison base file. In *Kelsey v. State ex rel. McManus*, 309 Minn. 560, 244 N.W.2d 53 (1976), this court affirmed the denial of habeas corpus relief but informed Kelsey how he could obtain relief, citing *County of Sherburne v. Schoen*, 306 Minn. 171, 236 N.W.2d 592 (1975). Instead of seeking relief in the manner that this court advised, Kelsey petitioned for Federal habeas corpus relief, but both the district and circuit courts denied relief, pointing to this court's decision and saying that Kelsey had not exhausted his state remedies. *Kelsey v. Minnesota ex rel. Wood*, 554 F.2d 895 (8 Cir. 1977).

   e. Kelsey next sought Federal habeas corpus relief on the ground that the parole board had violated some of his rights. The court in denying relief stated that Federal habeas corpus was available as a means of challenging an unconstitutional denial of parole, but the court ruled that Kelsey first had to exhaust his state remedies. *Kelsey v. Minnesota*, 565 F.2d 503 (8 Cir. 1977).

view of trial errors. Direct appeal and the postconviction remedy—both of which petitioner has used—are available for that purpose and the need for another means of raising the claim of trial error is therefore not apparent.

We have had more difficulty in deciding the issue presented by the appeal in File No. 49354 and have sought and received amicus briefs from a number of parties and a supplemental brief by the state. The issue is whether state habeas corpus— or some other remedy—should be made available as a means of reviewing allegations of failure of parole authorities to follow applicable statutory and constitutional principles in denying parole. We conclude that state habeas corpus is an appropriate remedy for this purpose in the absence of an amendment of the postconviction remedy statute to permit the postconviction remedy to be used for this purpose.

The traditional view was that the decision to grant parole was an act of grace by the parole authorities that was not subject to judicial review. However, in *State ex rel. Taylor v. Schoen*, 273 N.W.2d 612 (Minn.1978), we held that parole release decisionmaking must be conducted in accordance with due process. Accordingly, some judicial remedy must be made available to ensure the legal adequacy of procedures followed by parole authorities in denying parole.

The general rule in Minnesota has been that habeas corpus is an appropriate remedy if the relief to which the petitioner may be entitled is immediate release from confinement and if the petitioner is not confined pursuant to a final judgment of a competent court having jurisdiction over him. Thus, habeas corpus would not be available to a prison inmate who was confined pursuant to a final judgment unless the inmate challenged the jurisdiction of the court rendering the final judgment or the legality of his sentence. See, Minn.St. 589.01, .15.

This court expanded habeas corpus into a kind of all-purpose postconviction remedy in the early 1960's, prior to the enactment of the postconviction remedy act in 1967. Minn.St. 590.01, subd. 2, in effect provided that the newly-enacted postconviction remedy was to take the place of the expanded habeas corpus remedy whenever the two conflicted.

A.B.A. Standards for Criminal Justice, Post-Conviction Remedies (Approved Draft, 1968) § 1.1 recommends that the postconviction remedy should be unitary and comprehensive, encompassing all claims, including a claim of illegality of custody or supervision based on a judgment of conviction. Such a comprehensive remedy could include challenges to procedures followed in denying parole. See, also, id. § 2.1. The Minnesota statute, however, does not clearly provide for the availability of postconviction relief to challenge the fairness of procedures used in denying parole. It provides as follows:

"Except at a time when direct appellate relief is available, a person convicted of a crime, who claims that the conviction was obtained, or that the sentence or other disposition made violated his rights under the constitution or laws of the United States or of the state, may commence a proceeding to secure relief therefrom by filing a petition in the district court in the county wherein the conviction was had to vacate and set aside the judgment and to discharge the petitioner or to resentence him or grant a new trial or correct the sentence or make such other disposition as may be appropriate. Nothing contained herein shall prevent the supreme court, upon application by a party, from granting a stay of a case on appeal for the purpose of allowing an appellant to apply to the district court for an evidentiary hearing under the provisions of this chapter. Such proceeding shall conform with sections 590.01 to 590.-06." Minn.St. 590.01, subd. 1.

Since the postconviction remedy act does not provide for the availability of the reme-

dy to challenge the fairness of procedures used in denying parole, we must address the issue whether habeas corpus should be made available. While the habeas statute, see, Minn.St. 589.01, does not provide for the use of habeas in this kind of situation, this court clearly has the inherent judicial power to create an exception to the general rule that habeas is unavailable to a prisoner confined pursuant to a final judgment. In fact, both in Minnesota and in other states, exceptions have been made to the rule so as to provide prisoners with a ready means of relief where none would otherwise be available. Thus, habeas corpus is available under certain circumstances to test a claim of a prisoner that the conditions of his confinement constitute cruel and unusual punishment. *State ex rel. Crosby v. Wood*, 265 N.W.2d 638 (Minn.1978). In fact, some courts in other states have allowed the use of habeas corpus to challenge conditions of confinement that allegedly abridge interests protected by statute rather than by the constitution. See, e.g., *In re Harrell*, 2 Cal.3d 675, 87 Cal.Rptr. 504, 470 P.2d 640 (1970), certiorari denied, 401 U.S. 914, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971). Some of these same courts permit the use of habeas to challenge the determination of the length of confinement. See, e.g., *In re Streeter*, 66 Cal.2d 47, 56 Cal.Rptr. 824, 423 P.2d 976 (1967). See generally 39 C.J.S Habeas Corpus § 101a and cases cited therein.

A number of factors persuade us that habeas corpus should be made available as a remedy in the absence of an amendment to the postconviction remedy act:

(a) First, a high percentage of prisoners who seek judicial review of denial of parole are likely to be unrepresented. A recent study of civil suits brought by prisoners in Federal courts against state and local officials under 42 U.S.C.A., § 1983 revealed that over 80 percent of these cases were filed and prosecuted by prisoners unrepresented by counsel. Turner, *When Prisoners Sue*, 92 Harv.L.Rev. 610, 617. Habeas corpus, like the postconviction remedy, is a remedy that is easily sought by uncounseled prisoners.

(b) A second factor is the speed with which judicial review can be obtained using the remedy. One of the virtues of habeas corpus has always been that it is a quick way of obtaining judicial review.

(c) A third factor is the matter of venue. Under the habeas statute, venue would be in the county in which the prisoner is incarcerated. Minn.St. 589.02. One of the virtues of having venue in the county in which the prisoner is incarcerated is that the prisoner and his file will not have to be transported to some other county in the event a hearing is required.

In conclusion, we believe that, in the absence of an amendment of the postconviction remedy act to permit that remedy to be used for this purpose, habeas corpus is the most appropriate remedy.

Affirmed in part, reversed in part.

SCOTT, Justice (concurring specially).

I agree with the majority's holding that habeas corpus is an appropriate remedy for reviewing allegations of impropriety in denying parole. This conclusion is supported by our earlier decision in *State ex rel. Taylor v. Schoen*, 273 N.W.2d 612 (Minn.1978). In that case an inmate challenged, among other things, the validity of the procedures followed in denying her parole by filing a petition for a writ of habeas corpus. Without reservation, we assumed jurisdiction of the matter and reviewed her claims. The *Taylor* case, therefore, provides ample authority for allowing petitioner to seek relief from an allegedly unlawful parole procedure by invoking the remedy of habeas corpus.

Additionally, I believe the court should take this opportunity to clarify the present viability of the *Taylor* decision relative to the procedures to be followed in the parole process. The standards adopted in *Taylor, supra*, were derived from the case of *In-*

mates of the Nebraska Penal and Correctional Complex v. Greenholtz, 576 F.2d 1274 (8 Cir. 1978). Recently, the United States Supreme Court reversed the *Greenholtz* decision and ruled that the due process clause of the Fourteenth Amendment, at least with respect to the Nebraska parole legislation, does not require all the procedural safeguards adopted by the Eighth Circuit Court of Appeals. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* —— U.S. ——, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In light of the uncertainty generated by this Supreme Court opinion, I believe the *Taylor* procedures for parole consideration should be reaffirmed on the basis of our state constitution.[1] See, Minn.Const. art. 1, § 7. The *Taylor* decision manifests a strong conviction by this court that the procedures set out in that case are grounded on and, indeed, mandated by basic elements of fairness and equity. Therefore, I believe these interests should be protected under our state constitution by affording the Taylor procedural safeguards to prospective parolees.

TODD, Justice (concurring specially).

I join in the concurring opinion of Mr. Justice Scott.

WAHL, Justice (concurring specially).

I join in the concurring opinion of Mr. Justice Scott.

---

[1]. We may, of course, go further in guaranteeing procedural safeguards under our constitutional provision than the Supreme Court does in interpreting the Federal constitution. *State*

---

v. *Oman,* 261 Minn. 10, 21, 110 N.W.2d 514, 522 (1961), citing *State v. Lanesboro Produce & Hatchery Co.,* 221 Minn. 246, 265, 21 N.W.2d 792, 800 (1946) (dissenting opinion).