569 F.Supp. 545 (1983)
Tanja Y. WINTER, Plaintiff,
v.
NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE, Bobby R. Inman, Central Intelligence Agency, Stansfield Turner, Defendants.
Civ. No. 80-0860-E(I).
United States District Court, S.D. California.
August 4, 1983.
*546 John P. Murphy, American Civil Liberties Union of Southern California (San Diego Chapter), San Diego, Cal., for plaintiff.
Theodore M. Grossman, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

MEMORANDUM DECISION
ENRIGHT, District Judge.
On August 22, 1977 plaintiff Tanja Winter submitted a written request for access to documents maintained by the Central Intelligence Agency (CIA) under her name. The CIA determined that only one such document existed  a document originated by the National Security Agency (NSA) which consisted of information derived exclusively from the interception of foreign electromagnetic signals. Plaintiff's request was referred to the NSA. The NSA reviewed the document and concluded that it would not be released. Winter's administrative appeal was denied on July 20, 1978.
In July of 1980, plaintiff filed this action under the Freedom of Information Act, 5 U.S.C.A. § 552 (1977), to obtain access to the NSA file. Service was effected on the United States in the spring of 1983.
Mrs. Winter filed a motion under Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973), cert. *547 denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), to compel the government to provide the court and plaintiff with a detailed and specific justification, itemization and indexing, as required by law, for its refusal to disclose the requested documents. The government opposed the Vaughn motion on grounds that the information was properly withheld under both Exemption 1 and Exemption 3 of the Freedom of Information Act. The government also moved for summary judgment.
Oral argument on the motions was heard on June 6, 1983. Following the hearing, the court ordered the defendant to provide the court with a more detailed affidavit stating the reasons for nondisclosure of the requested document for ex parte in camera review. See, Order dated June 9, 1983. The court reviewed the material submitted for in camera inspection on July 26, 1983.
Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at the hearing on June 6, 1983, the court's inspection of the government's material in camera, and for the reasons set forth herein, the court denies plaintiff's motion for justification of nondisclosure under Vaughn v. Rosen, supra, and grants the defendants' motion for summary judgment. The court is satisfied that Exemptions 1 and 3 apply to justify the government's withholding of the requested document. The court also agrees with defendants that the document cannot be redacted to permit disclosure of portions of the document.

DISCUSSION

National Security Agency
Defendants have emphasized that the unique nature of the National Security Agency and its functions justify nondisclosure under Exemptions 1 and 3 of the Freedom of Information Act. A general description of the NSA and its activities is therefore in order.
The National Security Agency was established by Presidential Directive in 1952 as a separately organized agency within the Department of Defense. The agency is responsible for communications security and "signals intelligence" activities of the United States.
"Signals intelligence" refers to intelligence derived from interception of foreign electromagnetic signals. The NSA regularly monitors a certain proportion of radio communications and focuses on communication channels that yield a high proportion of useful intelligence information. This intelligence information is reported to national policy makers and others in the United States intelligence community.
Defendants argue that in this case, disclosure of any portion of the communication involving plaintiff will reveal the specific communication source. They point out that if a foreign power learns that a specific channel is monitored by the NSA, that foreign power may take steps to secure communications by upgrading or initiating cryptography. The foreign power may also use the suspect communication channel to pass misleading information.
Defendants also argue that release of the document would indicate how information is processed, thus disclosing information about NSA's functions. The communication targets and processing techniques identified in the document are still effective intelligence sources and methods.

Procedure Under the FOIA
In Hayden v. NSA, et al., 608 F.2d 1381 (D.C.Cir.1979), cert. denied, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980), the D.C. Circuit outlined the procedure to be followed by the trial court in Freedom of Information Act cases. It stated at 1384:
(1) The trial court must make a de novo review of the agency's classification decision, with the burden on the agency to justify nondisclosure. (2) In conducting this review, the court is to give "substantial weight" to the affidavits from the agency. (3) The court is to require the agency to create as full a public record as possible, concerning the nature of the documents and the justification for nondisclosure. (4) If step (3) does not create a sufficient basis for making a decision, *548 the court may accept classified affidavits in camera, or it may inspect the documents in camera. This step is at the court's discretion, with certain guidelines discussed below. (5) The court should require release of reasonably segregable part of documents that do not fall within FOIA exemptions.

Exemption 3
The court agrees that the information is properly withheld under Exemption 3 of the Freedom of Information Act, 5 U.S.C.A. § 552(b)(3), which reads:
(b) This section does not apply to matters that are  ... (3) specifically exempted from disclosure by statute ... provided that such statute (A) requires that such matters be withheld from the public in such a manner as to leave no discretion on the issue, or (b) establishes particular criteria for withholding or refers particular types of matters to be withheld.
The criteria for approving an exemption under Exemption 3 was set forth in National Com'n on Law Enforcement v. CIA, 576 F.2d 1373 (9th Cir.1978) at 1376:
In considering the CIA's claim that the requested materials are exempt from disclosure under Exemption Three, our inquiry is two-fold: (a) Is there a statute of the kind described by the exemption? and (b) Is the withheld material within the disclosure exemption contemplated by that statute.
The cases and legislative history cited in detail by the defendants provide ample authority that the three statutes on which the NSA bases nondisclosure  Public Law 86-36, 50 U.S.C.A. § 403(d)(3) (1951), and 18 U.S.C.A. § 798 (1976)  are statutes within Exemption 3. Indeed, Public Law 86-36 is particularly appropriate for application to the facts of this case. Section 6 of Public Law 86-36 states in pertinent part that no law shall be construed to require the disclosure of the organization or "any function" of the NSA or of "names, titles, salaries, or number of the persons employed" by the NSA. As indicated by the declaration of Wendell B. White, Director of Policy of the National Security Agency, and based on the court's own in camera review, release of the requested information would expose the NSA's intelligence functions and activities. Thus, the information is within the protection of Public Law 86-36 and Exemption 3 applies. See also, Hayden, supra, 608 F.2d at 1389-90.

Exemption 1
Defendants also argue that the requested document is properly withheld under Exemption 1 of the Freedom of Information Act, 5 U.S.C.A. § 552(b)(1). The court agrees.
Exemption 1 states:
(b) This section does not apply to matters that are(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (b) are in fact properly classified pursuant to such Executive order.
In order to demonstrate that it has properly withheld information under Exemption 1,
... [T]he agency has the burden under the statutory language to show (1) that it followed proper classification procedures, and (2) that by its description, the document logically falls within the claimed exemption.
Executive Order 12356, reproduced at 47 Fed.Reg. 14874 (April 6, 1982), provides for the classification of information the unauthorized disclosure of which "reasonably could be expected" to cause identifiable damage to the national security. The order defines "national security" as the "national defense and foreign relations of the United States." Id. at 14883. The White Declaration and the in camera review of the supplemental information clearly support the defendants' claim for exemption under Exemption 1. The document in question was properly classified. In addition, release of the document would disclose NSA intelligence activities, sources, and methods relating to national security. Specifically, release of the document could aid in identification of the communications channel that was monitored and hamper future efforts *549 at the interception of information on that channel.

Segregation
In FOIA cases, the courts have generally rejected an "exemption by document" approach. Non-exempt portions of a document must be disclosed unless they are inextricably intertwined with the exempt portions. Mead Data Central, Inc. v. Dept. of the Air Force, 566 F.2d 242, 260 (D.C.Cir. 1977). See also, Vaughn, supra, 484 F.2d at 825-26.
In this case, as noted above, the defendants were requested to provide the court with more detailed information for in camera review. The court specifically directed defendants to justify why portions of the document could not be segregated and released. Having reviewed the government's material in camera, the court is satisfied that no portion of the requested document can be redacted to permit disclosure.