NORTHWEST PUBLICATIONS, INC., Appellant,

v.

CITY OF BLOOMINGTON, Respondent.

No. CX–92–2358.

Court of Appeals of Minnesota.

May 4, 1993.

Paul R. Hannah, Laurie A. Zenner, Hannah & Zenner, St. Paul, for appellant.

David R. Ornstein, Bloomington, for respondent.

Considered and decided by HARTEN, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

LANSING, Judge.

In an action under the Minnesota Government Data Practices Act, Northwest Publications challenges the trial court's determination that certain documents relating to emergency and security plans of the Mall of America are entirely nonpublic data. We reverse and remand.

## FACTS

The City of Bloomington has possession of several emergency response plans relating to the Mall of America, and a protocol that governs the interaction between the Bloomington police and the mall's security personnel. In August 1992 a reporter from the Pioneer Press Dispatch requested access to the documents. Bloomington refused and Northwest Publications filed suit against the City of Bloomington demanding disclosure of the plans under the Minnesota Government Data Practices Act.

Prior to the trial court's order, Bloomington released to Northwest all but two sections of the protocol that it considered nonpublic. All of the documents were submitted to the trial court for *in camera* inspection. The trial court granted Bloomington's motion for summary judgment and denied Northwest access to any part of the data, relying primarily on Minn.Stat. § 13.-37, subd. 1(a) which defines and restricts public access to security information.

The court refused to segregate the documents into public and nonpublic components, holding that disclosure of selected portions might lead to an erroneous conclusion by the public that the mall does not have a comprehensive plan to respond to emergencies. Under this analysis, the trial court characterized all the documents as unseverable bundles of nonpublic data.

## ISSUE

Did the trial court correctly determine that the emergency plans and police proto-col were unseverable bundles of nonpublic security information under the Minnesota Government Data Practices Act?

## ANALYSIS

The Minnesota Government Data Practices Act provides that "[a]ll government data * * * shall be public" unless otherwise classified by statute or law. Minn.Stat. § 13.03, subd. 1 (1992). The statute "establishes a presumption that government data are public and are accessible by the public for both inspection and copying." Minn.Stat. § 13.01, subd. 3 (1992).

Minn.Stat. § 13.37 (1992) provides several exceptions to the presumption of accessibility, including a provision that classifies "security information" as nonpublic. "Security information" is defined as

government data the disclosure of which would be likely to substantially jeopardize the security of information, possessions, individuals or property against theft, tampering, improper use, attempted escape, illegal disclosure, trespass or physical injury.

Minn.Stat. § 13.37, subd. 1(a).

Bloomington argues that the Mall of America's emergency plans and police protocol are nonpublic "security information" under the statute. Northwest, which has not seen most of the data, concedes that some aspects of the plans and protocol may well be nonpublic. However, it asserts the right to review those portions of the data that are not protected security information and argues that the trial court violated the spirit and intent of the Data Practices Act when it cast a protective cloak over the documents in their entirety.

## I

Bloomington does not argue and the district court did not find that all information contained in the documents satisfies the statutory definition of "security information". It appears that selected provisions may appropriately be considered nonpublic "security information," but much of the data contained in the emergency plans and police protocol may be released to the pub-

lic without substantial risk to the safety of persons and property. Although appellate courts necessarily defer to trial courts on fact determinations, the issue for resolution is the legal question of whether the data must be viewed as a single integrated document or whether only those parts that satisfy the definition of security information are classified as nonpublic.

The Data Practices Act itself contemplates the possibility of documents containing both public and nonpublic data and provides for their separation. Minn.Stat. § 13.03, subd. 3 (1992), for example, provides that the government entity may not charge the requesting party "for separating public from not public data." *See also* Minn.Stat. § 13.82, subd. 9 (1992) (statute governing law enforcement data providing for the reasonable segregation of public and confidential data).

Minnesota case law supports an interpretation that results in separating public from nonpublic data when both are contained in the same document. In *Demers v. City of Minneapolis,* 468 N.W.2d 71 (Minn.1991), the supreme court held that information identifying complainants in nonpending, noncurrent police department internal affairs complaint forms was public data. In addressing a subsidiary issue on the assessment of costs, the court prohibited the city from charging the requesting party for copying costs necessary before nonpublic data could be blocked out. Applying Minn.Stat. § 13.03, subd. 3, the court held:

> While photocopying might be required to comply with a request for inspection if the data contains both not public and public data, such copying would simply be a function of separating public from not public data for which a political subdivision, under the statute, may not charge.

*Id.* at 75; *see also County of Sherburne v. Schoen,* 306 Minn. 171, 176, 236 N.W.2d 592, 595 (1975) (addressing the bifurcation of factual from confidential data under the predecessor Data Practices Act).

In interpreting the federal Freedom of Information Act (FOIA), 5 U.S.C.A. § 552 (Supp.1993), federal courts also have approached documents as separable rather than indivisible:

> [E]ntire documents may not be withheld merely because they contain some exempt information (citation omitted). Only if exempt and nonexempt information are "inextricably intertwined," such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value, may the court allow an entire document to be withheld pursuant to a FOIA exemption.

*Neufeld v. Internal Revenue Serv.,* 646 F.2d 661, 665–66 (D.C.Cir.1981); *see also Winter v. National Sec. Agency,* 569 F.Supp. 545, 549 (S.D.Cal.1983).

The federal standard is workable and consistent with the policies expressed in the Minnesota Government Data Practices Act. The focus of both the state and federal legislation is information, not documents. *See Mead Data Cent., Inc. v. U.S. Dept. of Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977). Employing the federal standard we hold that an entire document may be withheld only when the public and nonpublic information is so inextricably intertwined that segregating the material would impose a significant financial burden and leave the remaining parts of the document with little informational value.

The public and nonpublic information contained in the emergency plan and police protocol have not been shown to be so "inextricably intertwined" that their segregation would financially burden Bloomington and render the edited material of little informational value. To the contrary, the structure of the documents appears to lend itself to relatively simple separation. This has already been demonstrated by Bloomington's delivery of the police protocol to Northwest with the deletion of the two allegedly nonpublic sections.

## II

Northwest makes the additional argument that the district court's ruling in this case constitutes impermissible prior restraint on the press in violation of the First

Amendment. Northwest does not argue that Minn.Stat. § 13.37, subd. 1(a) is unconstitutional, and because our holding directs compliance with the statutory requirements, we decline to address the First Amendment arguments. *See State v. Hoyt,* 304 N.W.2d 884, 888 (Minn.1981) (constitutional questions decided only when necessary to dispose of case).

Finally, Northwest requests attorney's fees and costs under Minn.Stat. § 13.08, subd. 4. (1992). We decline to award attorney's fees and costs in this appeal, but on remand Northwest is free to pursue fees incurred in the district court proceedings.

### DECISION

We reverse the trial court's determination that the Mall of America's emergency plans and police protocol are entirely non-discoverable data. We remand to the district court to apply the appropriate standard to determine which portions of the documents are public and which are non-public security information.

**Reversed and remanded.**

SCHUMACHER, Judge (dissenting).

I respectfully dissent. The standard of review in this case is a question of first impression. I cannot agree with the majority's characterization of the issue on appeal. The majority reviewed the documents de novo.

I believe a "clearly erroneous" standard is more appropriate. *See Mead Data Cent. Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 250, 251 n. 13 (D.C.Cir. 1977). In *Mead,* the court concluded that whether the information sought by the plaintiff was within an exemption of the Freedom of Information Act was a factual dispute over the nature of the information. *Id.* at 250. In order to show that a decision that the data fell within the exemption was incorrect, a plaintiff "must establish that it was either based on an error of law or a factual predicate which is clearly erroneous." *Id.* at 251 n. 13.

I find that there were no legal errors. The statutory meaning of security informa-

tion was not disputed. Moreover, the district court *did* recognize that public information can be severed from a document. Based on factual determinations, however, the district court found that it could not do so. I do not find that these factual determinations were clearly erroneous.

The district court found that the documents were comprehensive, internally-consistent response plans. Disclosure of only parts of the plans would create an erroneous impression of the mall's security system. This, in turn, would lead to greater security risks. Therefore, release of only portions of the plans "would be likely to substantially jeopardize the security of * * * possessions, individuals, or property" located in the mall, thereby rendering the documents nonpublic security information under the terms of the Act. Minn.Stat. § 13.37, subd. 1(a) (1992). We should defer to the district court's characterization of the nature of the information.