# STATE EX REL. ROBERT LEE COLE v. RALPH H. TAHASH.

129 N. W. (2d) 903.

July 24, 1964—No. 39,235.

*James W. Brehl* and *Maun, Hazel, Green, Hayes, Simon & Aretz,* for appellant.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent, warden of State Prison.

FRANK T. GALLAGHER, C.

Appeal from an order of the District Court of Washington County denying petition for writ of habeas corpus. The basic issue is whether cruel and unusual treatment of a state prisoner is a ground for the issuance of a writ of habeas corpus.

2

In the petition[1] these facts appear: Relator, Robert Lee Cole, was arrested on July 8, 1955, and charged with the crime of being an accessory to a robbery, and on December 17, 1955, was convicted of robbery. Two days later he was sentenced to a term of not less than 10 or more than 80 years in the State Reformatory at St. Cloud, and on December 29, 1955, he was sent to the State Prison at Stillwater. It appears that sometime in 1961 he was sent from the State Prison to the Security Hospital at St. Peter, Minnesota. In June 1962 he was examined by a psychiatrist employed by his family who found him to be sane. In February 1963 he was returned to the State Prison at Stillwater. Relator claims that he was treated cruelly while at St. Peter and in the State Prison at Stillwater.

The trial judge filed a memorandum in support of his order denying the petition, which reads in part as follows:

"It is obvious from the petition of the relator that he makes no claim that the sentence which was imposed upon him and which he is presently serving, is invalid. In any event, he has set forth no facts or information in his petition upon which to base a prima facie showing of any jurisdictional irregularity in his sentence or the proceedings resulting in his commitment.

"It is obvious that his only claim to his immediate release is based upon the contention that he was wrongfully transferred from the St. Cloud Reformatory to the State Prison on December 29, 1955; that he was thereafter wrongfully transferred from the State Prison to the State Security Hospital at St. Peter; and, that while in the Security Hospital at St. Peter he was physically and mentally abused and maltreated; all of which he claims amounted to cruel and unusual punishment.

"In State, ex rel. Richter vs. Swenson, 243 Minn. 42-66 N. W. 2nd 17, it was held on page 45:

" 'We finally conclude that a writ of habeas corpus is not available in the present proceeding upon the grounds alleged, nor may it be

---

[1]The petition was prepared by petitioner acting pro se although he was represented on appeal by an attorney acting without compensation at the request of the court.

utilized for the purpose of avoiding governing rules imposed upon a prisoner lawfully in custody, or for the purpose of correcting alleged unconstitutional treatment of an inmate of the prison by prison authorities subsequent to a valid judgment and commitment.'

"To the same effect, see State, ex rel. Koalska vs. Swenson, 243 Minn. 46-66 N. W. 2nd 337, wherein it was also held on page 52, as follows:

" 'The remedy of the writ of habeas corpus is not available to the relator for the further reason that the statute providing for this remedy specifically excludes from its operation persons committed or detained by virtue of the final judgment of any competent tribunal of civil or criminal jurisdiction.'[2]

"Since it is obvious from the face of the petition (nothing appearing to the contrary) that relator is now in the State Prison under a valid commitment of a competent criminal court, habeas corpus is not available on the grounds he is attempting to assert."

With reference to relator's transfer from the reformatory to the State Prison, Minn. St. 243.77 provides:

"The commissioner of corrections may transfer from the reformatory to the state prison * * * when, in his judgment, such transfer will be advantageous to the person transferred, or to the institution from which such transfer is made. The commissioner shall make all needful rules for the employment, discipline, instruction, removal, release, or return of inmates of such institution."

In connection with relator's transfer from the State Prison to the Security Hospital at St. Peter, § 241.07 provides:

"The commissioner of corrections may transfer an inmate of the state prison, state reformatory for men, or state reformatory for women to a state institution for the mentally ill, mentally retarded or epileptic

[2]In State ex rel. Koalska v. Swenson, 243 Minn. 46, 66 N. W. (2d) 337, this court also said that the writ of habeas corpus may not be utilized for the purpose of obtaining relief from alleged ill-treatment at a prison when the petitioner is lawfully held under a valid judgment, sentence, and commitment. See cases cited therein.

or to the state sanatorium for diagnosis, treatment, or care which is not available at the prison or at a reformatory and shall cause a proper record thereof to be made at the institutions to which a transfer has been made and at his office. No such transfer shall be made by the commissioner of corrections without the approval of the commissioner of public welfare. An inmate of the prison or reformatory so transferred shall be returned to the prison or reformatory by order of the commissioner of corrections upon conclusion of treatment, or, if the inmate becomes eligible for release from custody pursuant to the terms of his sentence prior to conclusion of treatment, he shall be released unless prior to such time, he shall have been committed to such medical institution by competent authority as provided by law. The superintendent of any state hospital for the mentally ill or institution for the mentally retarded or epileptic shall at once notify the commissioner of corrections if there is any question as to the propriety of the commitment or detention of any person admitted to such institution and the commissioner shall immediately take action thereon."

Relator assigns as error that the trial court erred in denying his petition for a writ of habeas corpus without a hearing and without first appointing counsel to assist him or without advising him of his privilege to apply to the state supreme court for appointment of counsel to assist him where it appeared that he was indigent.

We are limited to a consideration whether the claims of the relator as set out in his petition were of such a character as to make it incumbent on the district court to require a hearing to test the merits of his claims. Further, should the scope of the writ of habeas corpus be extended to afford relief to a prisoner who claims that cruel and unusual punishment is being inflicted upon him during his incarceration in violation of his constitutional rights.

The legislature has full power to enact statutes relative to the custody, care, and control of persons convicted of crime. 18 C. J. S., Convicts, § 9.

"It has been said that the whole subject of the management and control of state prisoners convicted of crime is one for the legislature within the constitutional limitation against cruel and unusual punish-

ment; thus, while a convict may be subjected to strict or solitary confinement or such other reasonable punishment as the statute may authorize, cruel or excessive punishments may not be administered, and the courts by appropriate action will protect prisoners from such punishments. Corporal punishment is discouraged; it usually cannot lawfully be inflicted without legislative sanction, and is prohibited in many jurisdictions." 18 C. J. S., Convicts, § 11.

Although the allegations in the petition in this case appear to make a substantial showing of prohibited treatment, we are not convinced, under the record before us, that they are sufficient to make a prima facie showing of the kind of cruelty which is enjoined by the constitution. It is elementary that the constitution protects a prisoner against inhuman treatment.

It is urged here that we should hold that the writ of habeas corpus is available to inquire into whether or not a prisoner in serving the sentence imposed upon him is being inflicted with cruel and unusual punishment.

Relator argues that the trial court apparently ruled as a matter of law that infliction of cruel and unusual punishment upon a state prisoner by prison officials acting under color of their state authority cannot serve as grounds for issuance of a writ of habeas corpus. He contends that the contrary is the principal theory of his petition, citing Minn. Const. art. 1, § 5, to the effect that cruel or unusual punishment shall not be inflicted. He also contends that the corresponding right described in the Eighth Amendment of the United States Constitution applies to the several states through the Fourteenth Amendment, citing Robinson v. California, 370 U. S. 660, 82 S. Ct. 1417, 8 L. ed. (2d) 758, and Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. ed. (2d) 799.

While the writ of habeas corpus may have been historically considered in some places to have existed principally for the purpose of inquiring into alleged jurisdictional defects, the remedy now appears to have been broadened in some jurisdictions to permit inquiry into alleged violations of freedoms considered to be basic and fundamental.

See, Fay v. Noia, 372 U. S. 391, 83 S. Ct. 822, 9 L. ed. (2d) 837; Gideon v. Wainwright, *supra*.

Relator cites as controlling Johnson v. Dye (3 Cir.) 175 F. (2d) 250, and Coffin v. Reichard (6 Cir.) 143 F. (2d) 443, 155 A. L. R. 143.

Johnson v. Dye, *supra,* very thoroughly considers this problem[3] and holds that Federal court can test the validity of a Georgia imprisonment by habeas corpus; that freedom from cruel and unusual punishment is "basic and fundamental"; and that a state which inflicts such punishment deprives a prisoner of the due process of law guaranteed by the Fourteenth Amendment of the United States Constitution. The United States Supreme Court in Dye v. Johnson, 338 U. S. 864, 70 S. Ct. 146, 94 L. ed. 530, reversed that case on grounds that Johnson as a fugitive from the State of Georgia had failed to exhaust his remedies in that state, citing Ex parte Hawk, 321 U. S. 114, 64 S. Ct. 448, 88 L. ed. 572. The same result was reached in Sweeney v. Woodall, 344 U. S. 86, 73 S. Ct. 139, 97 L. ed. 114. In that case the United States Supreme Court assumes that the Eighth Amendment has been made applicable to the states by the Fourteenth Amendment.

In Coffin v. Reichard, *supra,* it was held that an unlawful restraint of a prisoner could be tested by habeas corpus even though the defendant was in lawful custody. The opinion in that case went on to say (143 F. [2d] 445):

"The Government has the absolute right to hold prisoners for of-

---

[3]See, also, 8 Villanova L. Rev. 379, for a comprehensive consideration of the use of habeas corpus to test cruel and unusual punishment as well as injunctions enforced by the powers of contempt. Some other sanctions available are also considered in Miller v. Overholser, 92 App. D. C. 110, 206 F. (2d) 415, 420, which suggests that it may be appropriate to order that the prisoner's civil rights be respected or direct the attorney general to transfer the prisoner to a different institution. There the court said, *"Mandamus* or injunction might also lie, but they would not preclude *habeas corpus* where illegal detention is involved." It was held in that case that it was within the power of habeas corpus to grant relief if a prisoner is illegally confined where he is confined.

fenses against it but it also has the correlative duty to protect them against assault or injury from any quarter while so held. A prisoner is entitled to the writ of habeas corpus when, though lawfully in custody, he is deprived of some right to which he is lawfully entitled even in his confinement, the deprivation of which serves to make his imprisonment more burdensome than the law allows or curtails his liberty to a greater extent than the law permits. Logan v. United States, 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429.

\* \* \* \* \*

"When a man possesses a substantial right, the courts will be diligent in finding a way to protect it. The fact that a person is legally in prison does not prevent the use of habeas corpus to protect his other inherent rights."[4]

See, also, Annotation, 155 A. L. R. 145. In Cochran v. Kansas, 316 U. S. 255, 62 S. Ct. 1068, 86 L. ed. 1453, habeas corpus was used to challenge the legality of the practice of prison officials in denying a convict the opportunity of presenting appeal papers to a higher court. Any unlawful restraint of personal liberty may be inquired into on habeas corpus. In re Bonner, 151 U. S. 242, 14 S. Ct. 323, 38 L. ed. 149; Fay v. Noia, *supra*; Jones v. Cunningham, 371 U. S. 236, 83 S. Ct. 373, 9 L. ed. (2d) 285. Louisiana ex rel. Francis v. Resweber, 329 U. S. 459, 67 S. Ct. 374, 91 L. ed. 422, clearly intimates that habeas corpus might be proper where the sentence is executed in a cruel and unusual manner in violation of the concepts of the Eighth Amendment. In that case, however, the court found that cruel and unusual punishment did not exist. Weems v. United States, 217 U. S. 349, 30 S. Ct. 544, 54 L. ed. 793, contains a rather exhaustive statement as to what is intended by the provisions against cruel and unusual punishment. In that case the United States Supreme Court held that a Philippine conviction violated the Eighth Amendment because of the nature of the punishment executed upon the prisoner.

---

[4]This case was remanded to the trial court for a hearing. It was determined that there was no cruel and unusual punishment. Upon appeal the decision of the trial court was affirmed. See, Coffin v. Reichard (6 Cir.) 148 F. (2d) 278.

In that connection see, also, Sutherland, *Due Process and Cruel Punishment,* 64 Harv. L. Rev. 271, and Notes, 59 Yale L. J. 800; 72 Yale L. J. 506.

Two recent cases in the Supreme Court of California clearly recognize the validity of the writ of habeas corpus to inquire into the infliction of cruel and unusual punishment. In re Riddle, 22 Cal. Rptr. 472, 372 P. (2d) 304, and In re Jones, 22 Cal. Rptr. 478, 372 P. (2d) 310.

The Court of Appeals of New York in People ex rel. Brown v. Johnston, 9 N. Y. (2d) 482, 485, 215 N. Y. S. (2d) 44, 45, 174 N. E. (2d) 725, said:

"In spite of the fact that it is well settled that one may not by means of a writ of habeas corpus challenge imprisonment or restraint 'by virtue of the final judgment * * * of a competent tribunal of * * * criminal jurisdiction' (Civ. Prac. Act, §§ 1231, 1230), it seems quite obvious that any *further* restraint *in excess* of that permitted by the judgment or constitutional guarantees should be subject to inquiry. An individual, once validly convicted and placed under the jurisdiction of the Department of Correction (Correction Law, § 6), is not to be divested of all rights and unalterably abandoned and forgotten by the remainder of society."

It also appears to be the rule in the State of Utah. Hughes v. Turner, 14 Utah (2d) 128, 378 P. (2d) 888; Young v. Wright, 14 Utah (2d) 130, 378 P. (2d) 889.

It is our opinion that the petition here is insufficient to establish a prima facie showing of cruel and unusual treatment, and the order of the district court denying the writ of habeas corpus without a hearing is affirmed. This decision is without prejudice to the rights of the petitioner to apply for habeas corpus upon adequate grounds if such grounds do in fact exist. We are satisfied that one confined in a state institution is entitled to a hearing upon a petition for a writ of habeas corpus if his petition is supported by a prima facie showing of a course of cruel and unusual treatment occurring at a time and place and under circumstances giving rise to the inference that the treatment will continue or be repeated in the absence of judicial intervention. The

minimal requisites of such a showing should include a verified statement detailing: (a) The facts respecting the treatment claimed to be cruel and unusual; (b) the time and place of such treatment; and (c) the identity of the person or persons considered responsible for it.

If it is made to appear, prima facie, that the treatment to which the petitioner has been subjected is in fact cruel and unusual and occurred at a time and place and under circumstances giving rise to the inference that the infringement of constitutional rights will be continued or repeated unless relief is afforded, the district court can and should grant a hearing on the petition. This should be done after affording all interested parties notice and opportunity to be heard. After a hearing, the trial court shall then make such a determination of the facts as the evidence justifies, and issue such an order as it deems necessary under the record before it to safeguard the constitutional rights of the petitioner. To this extent, the prior decisions of this court in State ex rel. Richter v. Swenson, 243 Minn. 42, 66 N. W. (2d) 17, and State ex rel. Koalska v. Swenson, 243 Minn. 46, 66 N. W. (2d) 337, are modified.

Affirmed.