**Wallace BEAULIEU, petitioner, Appellant,**

v.

**MINNESOTA DEPARTMENT OF HUMAN SERVICES, et al., Respondents.**

No. A10–1350.

Court of Appeals of Minnesota.

April 26, 2011.

Daniel E. Gustafson, David A. Goodwin, Gustafson Gluek PLLC, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, MN, for respondents.

Considered and decided by KLAPHAKE, Presiding Judge; JOHNSON, Chief Judge; and LARKIN, Judge.

## OPINION

JOHNSON, Chief Judge.

In 2006, Wallace James Beaulieu was civilly committed for an indeterminate period of time as a sexually dangerous person and a sexual psychopathic personality. His appointed counsel failed to file a timely notice of appeal from the district court's commitment order. In 2009, Beaulieu petitioned for a writ of habeas corpus, alleging that his appointed attorney provided ineffective assistance by failing to appeal from the commitment order in a timely manner. The district court denied the petition. We conclude that Beaulieu did not state a claim for relief in his habeas petition because the right to counsel in a civil-commitment proceeding is a statutory right, not a constitutional right. Therefore, we affirm.

## FACTS

Beaulieu is civilly committed to the Minnesota Sex Offender Program. His civil commitment is based on four incidents of sexual misconduct that were either proved or alleged. First, in July 1990, the state charged Beaulieu in Beltrami County with two counts of attempted first-degree murder, two counts of first-degree criminal sexual conduct, two counts of kidnapping, and theft of a motor vehicle, based on an incident involving an adult female cousin. He entered an *Alford* plea of guilty to third-degree criminal sexual conduct, third-degree assault, and kidnapping. The district court placed him on probation. Second, in May 1992, the state charged Beaulieu in St. Louis County with one count of first-degree criminal sexual conduct, two counts of third-degree criminal sexual conduct, and one count of obstructing legal process with force, based on an incident involving a 13–year–old girl. Beaulieu entered an *Alford* plea of guilty to one count of third-degree criminal sexu-al conduct, and the remaining charges were dismissed. The district court sentenced him to 66 months of imprisonment. Third, in August 1999, the state of Wisconsin charged Beaulieu with felony-level sexual intercourse without consent by use of force, based on an incident involving an adult female. A jury found him not guilty. Fourth, in September 2002, the state charged Beaulieu in Beltrami County with third-degree criminal sexual conduct based on an incident involving an adult female. A jury found him not guilty.

In October 2004, Beltrami County petitioned to civilly commit Beaulieu as a sexually dangerous person and a sexual psychopathic personality. After a three-day trial, the district court ordered his initial commitment in March 2006. The court conducted a review hearing in June 2006 and committed him for an indeterminate period of time in July 2006.

Three court-appointed attorneys represented Beaulieu, sequentially, during civil-commitment proceedings. Beaulieu asked the district court to discharge his first attorney at the beginning of the commitment trial. Over the state's objection, the district court granted Beaulieu's request. Beaulieu later asked the district court to re-appoint the first attorney, and the district court also granted that request. At the conclusion of the commitment trial, the first attorney moved to withdraw. The district court granted the motion and appointed a second attorney, who represented Beaulieu at the June 2006 review hearing. On August 1, 2006, the district court appointed a third attorney to be Beaulieu's appellate counsel.

Beaulieu's appellate counsel failed to file a timely notice of appeal from the order for indeterminate commitment. Because the order was filed on July 3, 2006, Beaulieu's notice of appeal was due September

1, 2006. *See* Minn.Stat. § 253B.23, subd. 7 (2010); Minn. Civ.App. P. 104.01. Beaulieu's appellate counsel filed the notice of appeal on September 8, 2006. The state moved to dismiss the appeal as untimely. Beaulieu's appellate counsel informed this court that he did not learn about his appointment until August 13, 2006, because he had been out of the state. Beaulieu's appellate counsel also explained that he had mistakenly believed that the indeterminate commitment order was filed after July 3, 2006. This court dismissed Beaulieu's appeal as untimely. *In re Commitment of Beaulieu*, No. A06–1702 (Minn. App. Oct. 3, 2006) (order). The supreme court denied Beaulieu's petition for further review. *In re Commitment of Beaulieu*, No. A06–1702 (Minn. Nov. 22, 2006) (order).

Beaulieu then turned his attention to the federal courts. In December 2006, he filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the District of Minnesota. *See* 28 U.S.C. § 2254 (2006). After appointing counsel, the federal district court denied the petition in August 2008 on the ground that Beaulieu had not exhausted his state-law remedies. *Beaulieu v. Minnesota*, Nos. 06–CV–4045 & 06–CV–4764, 2008 WL 4104701 (D.Minn. Aug. 28, 2008); *see also Beaulieu v. Minnesota*, No. 06–CV–4764, 2007 WL 2915077 (D.Minn. Oct. 4, 2007) (report and recommendation of magistrate judge). The federal district court's decision was affirmed on appeal in October 2009. *Beaulieu v. Minnesota*, 583 F.3d 570, 576 (8th Cir.2009).

At that point, Beaulieu returned to state court and commenced this action. In December 2009, with the assistance of the attorneys who were appointed by the federal district court, Beaulieu filed a petition for a writ of habeas corpus in the Carlton County District Court. Beaulieu alleged

that his appellate attorney had provided him with ineffective assistance by failing to file a timely notice of appeal from the July 2006 commitment order.

The district court denied the petition in June 2010. The district court reasoned that the appellate attorney's failure to file a timely notice of appeal did not constitute ineffective assistance of counsel because the Sixth Amendment right to the effective assistance of counsel does not apply to civil-commitment proceedings. The district court also stated that the failure to file a timely notice of appeal "did not violate [Beaulieu's] right to due process." The district court reasoned in the alternative that, even if the appellate attorney's performance was deficient, Beaulieu could not demonstrate that he was prejudiced by the untimely appeal because the evidence "overwhelmingly" supported the commitment order. Beaulieu appeals.

## ISSUE

Does Beaulieu's petition for a writ of habeas corpus state a claim for relief by alleging that he was denied the right to the effective assistance of counsel in a civil-commitment proceeding?

## ANALYSIS

Beaulieu argues that the district court erred by denying his petition for a writ of habeas corpus. Beaulieu contends that the failure of his appellate attorney to timely appeal the commitment order constitutes ineffective assistance of counsel. Beaulieu relies on two sources of law: a state statute that provides a right to an attorney in a civil-commitment proceeding and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In response, the Department of Human Services (DHS) contends that the district court did not err because a habeas petition must allege a constitutional

violation, because the Sixth Amendment right to the effective assistance of counsel does not apply in civil-commitment proceedings, and because Beaulieu's appellate attorney did not provide ineffective assistance. Because the relevant facts are undisputed, we apply a *de novo* standard of review. *State ex rel. Guth v. Fabian*, 716 N.W.2d 23, 26 (Minn.App.2006), *review denied* (Minn. Aug. 15, 2006).

### A.

We begin our analysis by considering DHS's argument that Beaulieu's habeas action must allege a constitutional violation and, thus, is not viable to the extent that it alleges a statutory violation.

■ The privilege of filing a writ of habeas corpus is guaranteed by the state constitution. Minn. Const. art. I, § 7. The legislature has made habeas corpus a statutory remedy. *See* Minn.Stat. §§ 589.01 to .35 (2010). The relevant chapter begins:

> A person imprisoned or otherwise restrained of liberty, except persons committed or detained by virtue of the final judgment of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon the judgment, may apply for a writ of habeas corpus to obtain relief from imprisonment or restraint.

Minn.Stat. § 589.01 (2010). It is well-established that a person who is civilly committed "can test the legality of his confinement by habeas corpus," although "the scope of inquiry is limited." *State ex rel. Anderson v. United States Veterans Hosp.*, 268 Minn. 213, 217, 128 N.W.2d 710, 714 (1964); *see also* Minn.Stat. § 253B.23, subd. 5 (2010) (stating that chapter 253B "shall not be construed to abridge the right of any person to the writ of habeas corpus").

No provision of chapter 589 states what a habeas petitioner must allege and prove to obtain a writ of habeas corpus. This court has stated that, in an action under chapter 589, "the only issues the district court will consider are constitutional and jurisdictional challenges." *Joelson v. O'Keefe*, 594 N.W.2d 905, 908 (Minn.App. 1999), *review denied* (Minn. July 28, 1999). But this court also has stated, "The scope of inquiry in habeas corpus proceedings is limited to constitutional issues and jurisdictional challenges, claims that confinement constitutes cruel and unusual punishment, *and claims that confinement violates applicable statutes.*" *Loyd v. Fabian*, 682 N.W.2d 688, 690 (Minn.App.2004), *review denied* (Minn. Oct. 19, 2004) (emphasis added).

In *Joelson*, we relied on *Anderson*. 594 N.W.2d at 908. In *Anderson*, the supreme court considered the following claims:

> (a) That the committing court acted without jurisdiction over subject matter or person; (b) that the law pursuant to which proceedings were taken is unconstitutional and therefore void; and (c) that the detention constitutes a violation of petitioner's constitutional rights, State and Federal, particularly the right to due process of law as a condition precedent to curtailment of liberty by governmental authority.

268 Minn. at 217, 128 N.W.2d at 714. The supreme court did not state in *Anderson* that the grounds urged in that case—lack of jurisdiction and unconstitutionality—are the only grounds for habeas relief. But that principle can be extracted from other supreme court opinions that were issued at the same time as *Anderson* and in subsequent years.

In *State ex rel. Cole v. Tahash*, 269 Minn. 1, 129 N.W.2d 903 (1964), the supreme court considered whether "the scope of the writ of habeas corpus [should]

be extended to afford relief to a prisoner who claims that cruel and unusual punishment is being inflicted upon him during his incarceration in violation of his constitutional rights." *Id.* at 4, 129 N.W.2d at 905. The petitioner relied on two constitutional provisions as the sources of the right to avoid cruel and unusual punishment. *Id.* at 5, 129 N.W.2d at 906 (citing U.S. Const. amend. VIII; Minn. Const. art. I, § 5). In the course of its discussion, the supreme court noted,

> While the writ of habeas corpus may have been historically considered in some places to have existed principally for the purpose of inquiring into alleged jurisdictional defects, the remedy now appears to have been broadened in some jurisdictions to permit inquiry into alleged violations of freedoms considered to be basic and fundamental.

*Id.* at 5, 129 N.W.2d at 906. The supreme court ultimately extended the scope of the writ in the manner urged by the petitioner, holding that he could obtain habeas relief if he could prove, among other things, "a course of cruel and unusual treatment." *Id.* at 8, 129 N.W.2d at 907. The *Cole* opinion indicates that, as of 1964, the supreme court viewed the habeas remedy as appropriate for jurisdictional defects and constitutional violations but no other types of unlawful restraint.

Approximately 15 years after *Anderson* and *Cole,* the supreme court twice raised the question whether a person could obtain habeas relief by establishing a violation of a state statute. But in neither case did the court answer the question in the affirmative. The first occasion was in *State ex rel. Crosby v. Wood,* 265 N.W.2d 638 (Minn.1978), in which the supreme court considered an argument "that petitioner was illegally transferred from the security hospital to the State Prison." *Id.* at 639. The court noted that the argument "raises

the issue of whether habeas corpus is available as a remedy for conditions of confinement which abridge interests protected by statute rather than by the constitution." *Id.* The supreme court resolved that issue by stating, "we need not decide the issue because the petition fails to present even a minimal showing that the appropriate [statutory] procedures ... were not followed." *Id.*

■ The second case alluding to statutory violations was *Kelsey v. State,* 283 N.W.2d 892 (Minn.1979), in which the supreme court considered a habeas petitioner's claim that he was wrongfully denied parole. *Id.* at 893–94. The central issue was whether such a claim could prevail despite the statute providing that habeas relief is "not ... available to a prison inmate who was confined pursuant to a final judgment unless the inmate challenged the jurisdiction of the court rendering the final judgment or the legality of his sentence." *Id.* at 894 (citing Minn.Stat. § 589.01). The supreme court resolved that issue in favor of the petitioner, stating that "this court clearly has the inherent judicial power to create an exception to the general rule that habeas is unavailable to a prisoner confined pursuant to a final judgment." *Id.* at 895. The court then noted that "some courts in other states have allowed the use of habeas corpus to challenge conditions of confinement that allegedly abridge interests protected by statute rather than by the constitution." *Id.* But the supreme court did not hold that a statutory violation may be the basis of habeas relief. *See id.* Together, *Crosby* and *Kelsey* demonstrate that the supreme court regards habeas as a remedy only for a jurisdictional defect or a constitutional violation. The supreme court has refrained from expanding the scope of the writ of habeas corpus to encompass statu-

tory violations that give rise to unlawful restraint.[1]

When this court stated in *Loyd* that "[t]he scope of inquiry in habeas corpus proceedings" may include "claims that confinement violates applicable statutes," *Kelsey* was the only supreme court opinion cited for that proposition. *Loyd*, 682 N.W.2d at 690. But *Kelsey* was not a case in which a habeas petitioner sought relief for a statutory violation. Rather, the petitioner in *Kelsey* alleged an unconstitutional denial of parole. 283 N.W.2d at 894. That claim was cognizable in a habeas proceeding because the supreme court had previously held that certain parole procedures are "constitutionally mandated" by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State ex rel. Taylor v. Schoen*, 273 N.W.2d 612, 615, 617 (Minn.1978); *see also Kelsey*, 283 N.W.2d at 894 (citing *Taylor* for proposition that "parole release decisionmaking must be conducted in accordance with due process"). No other support for *Loyd*'s reference to statutory violations appears on the face of that opinion. Therefore, it is appropriate to abide by our statement in *Joelson* that a habeas petition must allege either a lack of jurisdiction or a violation of a constitutional right, for that statement is the more accurate reflection of the supreme court's caselaw.

In sum, the supreme court has not held that habeas relief may be obtained based on a violation of a statute. Accordingly, Beaulieu may obtain habeas relief only if he can establish that he is restrained because of a constitutional violation.

**B.**

■ We next analyze whether Beaulieu's habeas petition alleges a constitutional violation. Beaulieu concedes that the Sixth Amendment right to the effective assistance of counsel does not apply in a civil-commitment proceeding. *See* U.S. Const. amend VI (providing for certain rights of "the accused" "[i]n all criminal proceedings"); *see also Kansas v. Hendricks*, 521 U.S. 346, 369, 117 S.Ct. 2072, 2086, 138 L.Ed.2d 501 (1997) (holding that double jeopardy clause of Fifth Amendment does not apply because civil commitment is civil, not criminal, in nature); *Carty v. Nelson*, 426 F.3d 1064, 1073 (9th Cir.2005) (holding that Sixth Amendment right to confrontation does not apply in civil-commitment proceedings). Rather, Beaulieu contends that his appellate attorney's failure to file a timely notice of appeal from the commitment order is a violation of his constitutional right to due process.

■ The Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids the state from depriving a person of life, liberty, or property "without due process of law." U.S. Const. amend. XIV.[2] Because civil com-

---

1. This remains true after the supreme court's opinion in *State v. Schwartz*, 628 N.W.2d 134 (Minn.2001), in which the appellant filed both a habeas petition and a postconviction petition. *Id.* at 138. Habeas was an appropriate remedy in that case for two reasons. First, the appellant argued that his confinement by the commissioner of corrections was unconstitutional on the ground that the commissioner's action was contrary to the separation-of-powers clause of the Minnesota Constitution. *Id.* at 138–41 (citing Minn.

Const. art. III, § 1). Second, the appellant argued that a no-contact term in the conditions of his release was unconstitutional on the ground of vagueness, *id.* at 142 & n. 4, which is a matter of due process under both the federal constitution and the state constitution, *State v. Christie*, 506 N.W.2d 293, 301 (Minn.1993) (cited in *Schwartz*).

2. Beaulieu relies solely on the United States Constitution. He has not cited or otherwise

mitment deprives a person of liberty, the protections of the Due Process Clause apply to civil-commitment proceedings. *Foucha v. Louisiana*, 504 U.S. 71, 75–76, 112 S.Ct. 1780, 1783, 118 L.Ed.2d 437 (1992); *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *In re Blodgett*, 510 N.W.2d 910, 916 (Minn.1994). The United States Supreme Court has recognized that the Due Process Clause may require the appointment of counsel in cases that are outside the scope of the Sixth Amendment right to the effective assistance of counsel. For example, in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Court held that juveniles have a right, protected by the Due Process Clause, to appointed counsel for "proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed." *Id.* at 41, 87 S.Ct. at 1451.

Beaulieu has not cited any cases that interpret the Due Process Clause to confer a right to appointed counsel on a person who is the subject of a civil-commitment proceeding. He cites *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), in which a plurality of four justices stated, in *dicta*, that the state district court had appropriately appointed counsel to represent a prisoner before he was involuntarily transferred to a mental hospital. *Id.* at 496–97, 100 S.Ct. at 1265–66. But the United States Supreme Court never has held that the Due Process Clause requires the appointment of counsel for a person who is the subject of a civil-commitment proceeding, nor has the Minnesota Supreme Court so held. Our research reveals that only one federal circuit court has recognized such a right. *See Heryford v. Parker*, 396 F.2d 393, 396 (10th Cir. 1968). It further appears that only two state supreme courts have held that due process requires a right to counsel in civil-commitment proceedings that is independent of an equivalent statutory right.[3] *See In re Beverly*, 342 So.2d 481, 489 (Fla. 1977); *In re Fisher*, 39 Ohio St.2d 71, 313 N.E.2d 851, 858 (1974). The concept of a constitutional right to counsel in civil-commitment proceedings was first articulated more than four decades ago but has not gained wide acceptance. The weight of the authorities recognizing that right is less than that of the authorities that led our state supreme court to apply the Due Process Clause to parole decisions; our supreme court then noted that five federal circuit courts had applied the Due Process Clause to that situation. *See Taylor*, 273 N.W.2d at 616–17. We naturally are disinclined to recognize a federal constitutional right that never has been recognized by the United States Supreme Court, has not been recognized in 10 of the 11 regional federal circuit courts, and has not been adopted by the supreme courts of 48 of the 50 states. Thus, we conclude that it would not be appropriate for this court to extend federal constitutional law in the manner urged by Beaulieu.

In sum, neither the United States Supreme Court nor the Minneso-

---

invoked the due process clause of article I, section 7, of the Minnesota Constitution.

3. Beaulieu has not argued that he has a constitutional right to counsel on the ground that the Due Process Clause requires compliance with his statutory right to counsel. *See Vitek*, 445 U.S. at 488–91, 100 S.Ct. at 1261–63 (noting in part III.A. that "state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause" but not applying that principle to right to counsel); *In re Detention of Crane*, 704 N.W.2d 437, 438–39 (Iowa 2005) (noting state's concession that due process requires effective assistance of counsel because of statutory right to counsel in civil-commitment proceedings).

ta Supreme Court has held that the Due Process Clause of the Fourteenth Amendment confers a right to the effective assistance of counsel on a person who is the subject of a civil-commitment proceeding. That proposition has been recognized in only one federal circuit court and adopted by only two state supreme courts. Accordingly, Beaulieu may not obtain habeas relief on the ground that his appellate attorney's failure to file a timely notice of appeal is a violation of the Due Process Clause.

### C.

As stated above, the only remaining ground for relief is a state statute that provides, "A person has the right to be represented by counsel at any proceeding under this chapter." Minn.Stat. § 253B.07, subd. 2c (2010). A person who is the subject of a civil-commitment proceeding is entitled to "a qualified attorney," whom the district court may appoint if the person has not retained private counsel. *Id.* Specifically, the attorney must:

(1) consult with the person prior to any hearing;

(2) be given adequate time and access to records to prepare for all hearings;

(3) continue to represent the person throughout any proceedings under this chapter unless released as counsel by the court; and

(4) be a vigorous advocate on behalf of the person.

*Id.* If a person claims that he was denied this statutory right to counsel, this court analyzes the claim by borrowing the analytical framework ordinarily used in criminal cases when applying the Sixth Amendment right to counsel. *See In re Cordie,* 372 N.W.2d 24, 28–29 (Minn.App.1985) (cit-

ing *Strickland v. Washington,* 466 U.S. 668, 678, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), *review denied* (Minn. Sept. 26, 1985); *see also In re Dibley,* 400 N.W.2d 186, 190 (Minn.App.1987), *review denied* (Minn. Mar. 25, 1987).

Having conceded that the Sixth Amendment does not apply in civil-commitment proceedings, Beaulieu seizes on the fact that this court applies the Sixth Amendment caselaw when analyzing an alleged violation of the right to counsel found in section 253B.07, subdivision 2c. He contends, in effect, that the statutory right to counsel has been converted into a constitutional right. Despite the uniformity in mode of analysis, however, the right provided by section 253B.07, subdivision 2c, remains a statutory right, not a constitutional right. Thus, Beaulieu may not obtain habeas relief based on the alleged violation of section 253B.07, subdivision 2c.

We note that our conclusion in this case does not foreclose relief for all civilly committed persons who claim that their appellate counsel violated the professional duties arising from the right to counsel found in section 253B.07, subdivision 2c. As our caselaw demonstrates, such a claim may be raised in a motion to vacate a commitment order filed pursuant to rule 60.02 of the Minnesota Rules of Civil Procedure. *See, e.g., Cordie,* 372 N.W.2d at 28 (considering ineffective assistance claim raised by rule 60.02 motion to vacate); *cf. In re Commitment of Lonergan,* 792 N.W.2d 473, 476–77 (Minn.App.2011) (holding that Minn.Stat. § 253B.17, subd. 1, precludes sexually dangerous person from filing rule 60.02 motion to vacate on ground that patient is not "in need of continued care and treatment"), *review granted* (Minn. Apr. 19, 2011).[4]

---

**4.** It appears that Beaulieu's appellate attorney

intended to argue, in part, that the district

## DECISION

A petition for a writ of habeas corpus must allege a lack of jurisdiction or a constitutional violation. Neither the United States Supreme Court nor the Minnesota Supreme Court has held that the Due Process Clause of the Fourteenth Amendment created a right to the effective assistance of counsel for a person who is the subject of a civil-commitment proceeding. Beaulieu's right to counsel in his civil-commitment proceeding was based solely on a statute. In the absence of a constitutional right to counsel, Beaulieu's habeas petition does not state a claim for relief. Therefore, the district court did not err by denying Beaulieu's petition for a writ of habeas corpus.

**Affirmed.**

KLAPHAKE, Judge (dissenting).

I respectfully dissent. I do not agree that the law of habeas corpus is as narrowly limited as the majority's interpretation of relevant case law suggests. Relying on a long line of authority, the United States Supreme Court stated that "habeas relief in cases involving Executive detention" is not limited to claims of "constitutional error." *Immigr. & Nat. Serv. v. St. Cyr*, 533 U.S. 289, 302–03, 121 S.Ct. 2271, 2280, 150 L.Ed.2d 347 (2001). Likewise, Minnesota law does not draw this distinction as closely as my colleagues suggest. The Minnesota Supreme Court stated that *"[p]ossible* grounds for habeas corpus relief include constitutional and jurisdictional challenges." *State ex rel. Anderson v. U.S. Veterans Hosp.*, 268 Minn. 213, 217, 128 N.W.2d 710, 714 (1964) (emphasis added). In fact, Minnesota courts have often considered habeas claims based on matters beyond jurisdiction or constitutional rights. *See, e.g., State v. Schwartz*, 628 N.W.2d 134, 141 n. 3 (Minn.2001) (approving habeas petition as a means of testing commissioner of corrections' statutory authority over supervised and conditional release terms); *Kelsey v. State*, 283 N.W.2d 892, 894 (Minn.1979) (determining in absence of another remedy use of habeas petition to secure review of failure of parole authorities to follow applicable statutory and constitutional principles); *Loyd v. Fabian*, 682 N.W.2d 688, 690 (Minn.App.2004) (noting that scope of inquiry in habeas proceedings is "limited to constitutional issues, jurisdictional challenges, claims that confinement constitutes cruel and unusual punishment, and claims that confinement violates applicable statutes"). Although the majority notes that the supreme court "has not held that habeas relief may be obtained based on a violation of a statute," it also has not held to the contrary.

Indeterminate civil commitment is clearly a restraint of a liberty interest, and this state's civil commitment law grants appellant the right to representation "at any proceeding" by "a vigorous advocate on behalf of the person." Minn.Stat.

court did not have subject-matter jurisdiction to civilly commit Beaulieu due to his membership in the Leech Lake band of the Ojibwe tribe. Such an argument presently is foreclosed by this court's opinion in *In re Commitment of Johnson*, 782 N.W.2d 274 (Minn. App.2010), *review granted* (Minn. Aug. 10, 2010), in which we held that a state court had subject-matter jurisdiction over a member of the Leech Lake band. *Id.* at 281. The supreme court granted further review of *Johnson*, and the case presently is pending there.

If the supreme court were to hold that a state court lacks subject-matter jurisdiction over a member of the Leech Lake band, Beaulieu arguably still could challenge his commitment in a motion to vacate the commitment order. *See* Minn. R. Civ. P. 60.02(d) (authorizing district court to vacate order on ground that "judgment is void"); *Bode v. Minnesota Dept. of Natural Resources*, 612 N.W.2d 862, 869 (Minn.2000) (holding that party may move to vacate under rule 60.02(d) for lack of subject-matter jurisdiction within reasonable time).

§ 253B.07, subd. 2c. Through a failure of this statutory right, appellant has been cast into a no-man's land of non-remedy and indefinite loss of liberty: he has had no direct appeal; his federal habeas petition has been denied because of a failure to exhaust state remedies; and we now are preparing to hold that the final remedy, a state habeas challenge, is also unavailable.[5] I would reverse and permit appellant to raise his habeas challenge of ineffective assistance of counsel.

---

5. The majority suggests that appellant is not foreclosed from challenging his attorney's effectiveness by motion pursuant to Minn. R. Civ. P. 60.02. Motions for relief under rule 60.02 must be made "within a reasonable time." Appellant was civilly committed in 2006.