*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1254
A16-1270**

In the Matter of the Welfare of the Child of: M. M. and L. S., Parents.

**Filed February 17, 2017
Affirmed
Reyes, Judge**

Carlton County District Court
File Nos. 09-JV-16-86; 09-JV-15-229

Bill L. Thompson, Duluth, Minnesota (for appellant L.S.)

Terri Port Wright, Cloquet, Minnesota (for appellant M.M.)

Thomas H. Pertler, Carlton County Attorney, Jeffrey Boucher, Assistant County Attorney, Carlton, Minnesota (for respondent)

Tim DiPuma, Carlton, Minnesota (guardian ad litem)

        Considered and decided by T. Smith, Presiding Judge; Johnson, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

        In a consolidated appeal, appellant-mother, L.S., and appellant-father, M.M., each challenge the district court's termination of their parental rights. In addition, M.M. argues that he received ineffective assistance of counsel. Because we conclude that the district court did not abuse its discretion in determining that (1) Carlton County Public

Health and Human Services (the county) made reasonable efforts to rehabilitate L.S. and M.M. and to reunite the family; (2) there is a statutory ground for termination; (3) termination is in the best interests of the children; and (4) M.M. is unable to satisfy the *Strickland* standard, we affirm.

## FACTS

R.R.M. was born in 2015, to father M.M. and mother L.S. Prior to R.R.M.'s birth, both parents received social services, including three sessions of prenatal education from the public-health nurse. The public-health nurse noted that both parents possessed a low knowledge base and that most people tend to have more parental knowledge before having a child. After R.R.M.'s birth, hospital staff observed both parents exhibiting elevated levels of stress and frustration around the child. L.S. told the hospital nursing staff that she needed medication to deal with the stress, that she only knows what not to do with the infant, and that she had not hit the child. Hospital staff observed M.M. standing near R.R.M.'s bassinet while clenching and unclenching his fists. M.M. stated to the hospital staff that it was not a good idea for him to soothe the child because he does not deal with stress well. A report was filed with the county, which raised concerns about the parents' ability to parent and care for R.R.M.

The child-protection investigator with the county, who was assigned to the case, interviewed the parents at the hospital. Both parents indicated that they had initially been frustrated with R.R.M. but that they felt their parenting abilities were improving. By the end of the interview, the investigator was concerned that the parents were not having any physical interaction with R.R.M., that they did not have a solid family support structure

in place, and that they did not possess the capabilities to adequately parent. As a result, the investigator requested that a protective-law-enforcement hold be placed on R.R.M. The investigator also spoke with the parents' respective social workers. The following day, the investigator met the parents at their residence and had significant concerns with the condition of the residence, including the lack of a sanitary place to bathe R.R.M., exposed electrical hazards, and inadequate fire safety. They informed the investigator that they used a bucket to transport bodily waste from their unit to a bathroom that they shared with other tenants.

While R.R.M. was still in the hospital, a petition alleging R.R.M. to be a child in need of protection or services was filed pursuant to Minn. Stat. § 260C.007, subds. 6(3), (4), (8), (9) (2014). Following an emergency protective-care hearing on that same date, the county was granted temporary legal and physical custody of R.R.M. The county placed R.R.M. in the foster care of S.G. Both parents participated, with their attorney[1], in a parallel protection process family planning conference and both agreed to enter an admission that R.R.M. was in need of protection or services pursuant to Minn. Stat. § 260C.007, subd. 6(3). Subsequently, R.R.M. was adjudicated in need of protection or services and, following a reunification plan filed by the county, the district court ordered the parents to work towards reunification.

The reunification plan stated that both parents were to: (1) complete a psychological evaluation and follow any recommendations; (2) be in communication with

---

[1] Both parents were assigned the same attorney to represent them.

3

the county; (3) continue working with the public-health nurse; (4) obtain safe and suitable housing for R.R.M.; and (5) regularly attend visitation with R.R.M. In addition, L.S. was to continue to work with her developmental-disabilities case manager and semi-independent living-skills worker, and M.M. was to continue working with his social worker.

Thereafter, the county filed a petition seeking termination of parental rights. In terminating L.S. and M.M.'s parental rights, the district court determined that clear and convincing evidence supported that (1) the county made reasonable efforts to rehabilitate the parents in order to reunite the family; (2) three statutory grounds for termination exist pursuant to Minn. Stat. § 260C.301 subd. 1 (b)(2), (5), (8) (2014); and (3) termination is in the best interests of R.R.M. Each parent filed an appeal, and this court consolidated those appeals.

**D E C I S I O N**

Courts presume that natural parents are fit to care for their child, and "[p]arental rights may be terminated only for grave and weighty reasons." *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012) (quotation omitted). Termination requires clear and convincing evidence that (1) the county has made reasonable efforts to rehabilitate the parent and reunite the family; (2) there is at least one statutory ground for termination; and (3) termination is in the child's best interests. *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). "[O]n appeal from a district court's decision to terminate parental rights, we will review the district court's findings of the underlying . . . facts for clear error, but we review its determination of whether a

4

particular statutory basis for involuntarily terminating parental rights is present for an abuse of discretion." *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012); *see* Minn. Stat. § 260C.301, subd. 1(b) (listing bases for terminating parental rights). The "district court's individual fact findings will not be set aside unless our review of the entire record leaves us with a definite and firm conviction that a mistake has been made." *In re Welfare of D.T.J.*, 554 N.W.2d 104, 107 (Minn. App. 1996) (quotation omitted).

**I.      The district court did not abuse its discretion in determining that the county made reasonable efforts to rehabilitate L.S. and M.M. and to reunite the family.**

In order to terminate L.S. and M.M.'s parental rights, the district court must make "specific findings" that the county made reasonable efforts to rehabilitate them and to reunite the family. Minn. Stat. § 260C.301, subd. 8 (2014). "When determining whether reasonable efforts have been made," the district court must consider "whether services to the child and family were: (1) relevant to the safety and protection of the child; (2) adequate to meet the needs of the child and family; (3) culturally appropriate; (4) available and accessible; (5) consistent and timely; and (6) realistic under the circumstances." Minn. Stat. § 260.012(h) (2014). "Reasonable efforts at rehabilitation are services that go beyond mere matters of form so as to include real, genuine assistance." *In re Welfare of Children of S.W.*, 727 N.W.2d 144, 150 (Minn. App. 2007) (quotations omitted), *review denied* (Minn. Mar. 28, 2007).

The district court found that the county provided the following nonexclusive list of services to the parents over a 300-day period:  foster-care placement; child-protection

case-management services; supervised visitation; psychological assessments; and coordination of mental-health services. A county social worker testified at length regarding the county's extensive efforts and the case-plan services made available to both parents throughout the pendency of this matter. She testified that, despite the department's dedicated assistance and efforts, both parents' case-plan compliance was inconsistent, and they failed to follow up on the recommendations found in their evaluations, including enrolling in individual therapy sessions. She further testified that, although the parents were able to find amenable housing pursuant to their case plan, they failed to work with their public-health nurse or other social-service workers throughout the reunification process. She also testified that during the supervised visitations at WINDOW Visitation Center,[2] arrangements were made to provide both parents with one-on-one parenting instruction. However, staff notes from WINDOW indicate that they were not willing to receive such instruction, they would still grow frustrated with R.R.M., they demonstrated a lack of understanding of R.R.M.'s development and developmental needs, and they still demonstrated a lack of ability to adequately care and interact with R.R.M. In addition, of the 44 scheduled visitations, the parents cancelled at least 13 of them.

The district court found that parental instruction was provided to the parents throughout the pendency of this case, and the parents failed to make adequate progress in addressing the concerns which led to the out-of-home placement. The district court also

---

[2] WINDOW is a non-profit corporation that, among other things, operates a visitation and safe exchange center in Hinckley, Minnesota.

found that the county attempted to find alternative placement with relatives, which was unsuccessful. Finally, the district court found that the parents failed to access services that might have improved their parenting skills. As a result, the district court determined that the county made reasonable efforts to rehabilitate the parents and to reunite them with R.R.M., and the county's "efforts have been relevant to the safety and protection of the child, adequate to meet the needs of the family, and are culturally appropriate."

After a careful review of the record, we conclude that the district court's finding that the county's extensive efforts were genuine and adequate to address this family's unique needs is not clearly erroneous. Therefore, the district court did not abuse its discretion in determining that the county made reasonable efforts to rehabilitate the parents and to reunite the family.

**II.    The district court did not abuse its discretion in determining that at least one statutory ground for termination has been met.**

The district court found clear and convincing evidence in support of three statutory bases for terminating the parental rights of both parents. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (5), (8). Since only one statutory ground must be supported by clear and convincing evidence, our analysis will address only subdivision 1(b)(5). *See In re Children of T.R.*, 750 N.W.2d 656, 661 (Minn. 2008).

A statutory basis for terminating parental rights exists under subdivision 1(b)(5) when "reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's placement" out of the home. Subdivision 1(b)(5) further provides that a failure of reasonable efforts is presumed where

7

> (i) a child has resided out of the parental home under court order for a cumulative period of 12 months within the preceding 22 months. In the case of a child under age eight at the time the petition was filed alleging the child to be in need of protection or services, the presumption arises when the child has resided out of the parental home under court order for six months unless the parent has maintained regular contact with the child and the parent is complying with the out-of-home placement plan; (ii) the court has approved the out-of-home placement plan . . . ; (iii) conditions leading to the out-of-home placement have not been corrected . . . ; and (iv) reasonable efforts have been made by the social services agency to rehabilitate the parent and reunite the family.

Minn. Stat. § 260C.301, subd. 1(b)(5)(i)–(iv). The district court determined that this presumption applies to R.R.M. because the parents had failed to maintain regular contact by cancelling many of their visits and failed to follow the out-of-home placement plan. The district court also determined that reasonable efforts "to permit reunification and prevent out-of-home placement and finalize the permanency plan for the child have been made."

As stated above, the record supports the district court's determination that the county made reasonable efforts to rehabilitate both parents and to reunite the family. The district court found by clear and convincing evidence that neither parent utilized these efforts to correct the conditions that led to out-of-home placement. We conclude that the record supports the finding that the county's reasonable efforts, under the district court's direction, failed to correct the parents' inability to care for and understand the needs of R.R.M., which were the conditions that led to R.R.M.'s out-of-home placement. Therefore, the district court did not abuse its discretion in determining that a statutory ground for termination exists under subdivision 1(b)(5).

8

**III.   The district court did not abuse its discretion in determining that termination of both parents' parental rights is in the best interests of R.R.M.**

In a termination proceeding, "the best interests of the child must be the paramount consideration." Minn. Stat. § 260C.301, subd. 7 (2014). "We review a district court's ultimate determination that termination is in a child's best interest for an abuse of discretion." *J.R.B.*, 805 N.W.2d at 905. "[T]he court must balance three factors: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child." *In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 711 (Minn. App. 2004). Competing interests of the child "include a stable environment, health considerations, and the child's preferences." *In re Welfare of M.A.H.*, 839 N.W.2d 730, 744 (Minn. App. 2013). In its termination order, the district court must explain its rationale for concluding why termination is in the child's best interests. *In re Tanghe*, 672 N.W.2d 623, 625 (Minn. App. 2003).

The district court found that it is in R.R.M.'s best interests to achieve permanency as soon as possible. The district court also found that L.S. and M.M. have demonstrated that if R.R.M. remains in their custody, he will be at continued risk of not receiving the care needed for his safety and development, especially considering his young age. In addition, R.R.M.'s guardian ad litem testified that termination was in R.R.M.'s best interests because both parents have demonstrated a lack of progress in being able to demonstrate that they can care for their child's needs. As a result, the district court

9

determined that, despite the parents expressed interest in parenting R.R.M., it is in the best interests of the R.R.M. to terminate L.S. and M.M.'s parental rights.

We conclude that the district court's findings are firmly supported by the record, which includes ample evidence of the parents' failure to access services directed at assisting them with parenting and their behavioral issues. Further, the record demonstrates an ongoing lack of progress in L.S. and M.M.'s ability to care for R.R.M. and understand his behavior. Because the child's best interests must be the paramount consideration, the district court did not abuse its discretion in determining that termination of L.S. and M.M.'s parental rights is in the best interests of the R.R.M.

## IV.   M.M.'s ineffective assistance of counsel argument is without merit.

M.M. argues that his due-process rights were violated due to ineffective assistance of trial counsel. Specifically, M.M. argues that there was an inherent conflict of interest in one attorney representing both parents and that the quality of representation he received was insufficient. M.M. contends that he was more engaged with his case plan than L.S. and that their attorney did not represent that in an effort not to damage L.S.'s case.

M.M. has "the right to effective assistance of counsel in connection with a proceeding in juvenile court." Minn. Stat. § 260C.163, subd. 3(a) (2014). Minnesota courts have used the test set out in *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2068 (1984) when considering ineffective assistance of counsel claims in noncriminal matters. *See, e.g.*, *In re Welfare of L.B.*, 404 N.W.2d 341, 345 (Minn. App. 1987) (applying *Strickland* in juvenile-delinquency context); *see also Beaulieu v. Minn.*

*Dep't of Human Servs.*, 798 N.W.2d 542, 550 (Minn. App. 2011). Under *Strickland*, M.M. has the burden of establishing, by a preponderance of the evidence, that his attorney's representation "fell below an objective standard of reasonableness" and that a reasonable probability exists that, but for the attorney's error, the result of the proceeding would have been different. *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2068). This court "need not address both the performance and prejudice prongs if one is determinative." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). Here, M.M. is unable to demonstrate either prong.

To establish deficient performance, M.M. must demonstrate that his attorney's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2068. In Minnesota, an attorney acts competently when one demonstrates "representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Gassler*, 505 N.W.2d 62, 70 (Minn. 1993) (quotation omitted). To prevail on his claim, M.M. must overcome the strong presumption that his attorney's performance was "within the wide range of reasonable professional assistance." *Pierson v. State*, 637 N.W.2d 571, 579 (Minn. 2002) (quotation omitted). Under the prejudice prong, reasonable probability means a probability sufficient to undermine confidence in the outcome of the case. *See Rhodes*, 657 N.W.2d at 842.

Contrary to M.M.'s assertion, the record indicates no conflict arising from a single attorney representing both parents in this matter. Their positions and interests were aligned and, as a result, both raised the same arguments in defense of their parental rights.

11

The district court made numerous findings of fact demonstrating that M.M., like L.S., failed to follow the case plan in learning to care for R.R.M.  On appeal, M.M. also challenges his attorney's trial strategy, including an alleged failure to object to much of the county's evidence.  However, we do not review competency of trial strategy.  *See State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999).  Therefore, M.M.'s ineffective-assistance claim is without merit as he unable to satisfy the *Strickland* standard.

**Affirmed.**